1
2
3
4
5
6
7
8
9
10

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

11
12
13
14
15
16
17
18

AEGIS SOFTWARE, INC. dba
SAN DIEGO SPIRITS FESTIVAL
and SAN DIEGO SPIRITS
BOTTLE COMPETITION,

                                    Plaintiff,

v.

22nd DISTRICT AGRICULTURAL
ASSOCIATION,

                                    Defendant.

Case No.:  15cv2956 BTM (BLM)

**ORDER DENYING IN PART AND
GRANTING IN PART
DEFENDANT'S MOTION TO
DISMISS**

19
20
21
22
23
24

        On December 30, 2015, Plaintiff Aegis Software, Inc., filed a Complaint against Defendant 22nd District Agricultural Association. (ECF No. 1.) On February 29, 2016, Defendant filed a motion to dismiss. (ECF No. 9.) For the reasons discussed below, Defendant's motion to dismiss is **DENIED IN PART** and **GRANTED IN PART**.

25
26
27
28

## I. FACTUAL BACKGROUND

        Plaintiff Aegis Software hosts the "San Diego Spirits Festival" (hereinafter "SDSF"), an annual specialty cocktail and spirits festival held in San Diego since

2009. (Compl. ¶¶ 8-10.) In preparation for the first event, Plaintiff registered the fictitious business name "San Diego Spirits Festival" with the San Diego County Clerk. (Compl. ¶ 14.) In 2014, after consecutive years of growth in both attendance and vendor participation, the SDSF "enjoyed approximately 3800 attendees (a 35% increase from the prior year) and 80 'Spirit Brands' (a 23% increase from the prior year)." (Compl. ¶ 23.)

The SDSF is marketed through a variety of online, radio, television, and print medias. (Compl. ¶ 11.) Local news and media outlets have covered and promoted the SDSF, and the SDSF has been featured in various online publications associated with alcoholic beverages. (Compl. ¶ 30.) Travel publications, including Fodor's and Premier Traveler Magazine, have also featured the SDSF. (Compl. ¶ 30.) Finally, starting in 2013, the San Diego mayor has proclaimed a day in August each year as "San Diego Spirits Festival Day." (Compl. ¶ 31.)

In 2013, and given the success of the SDSF, Plaintiff hosted the first annual "San Diego International Spirits Bottle Competition" (hereinafter "Competition"). (Compl. ¶ 20.) The Competition takes place during the SDSF and features applicants from around the world that submit new spirits for competition and judging. (Compl. ¶ 21.) In 2013 the Competition featured 35 competitors, and in 2014 the Competition featured 86 competitors. (Compl. ¶¶ 22, 23.)

**A.    The SDSF Mark and Competition Mark**

On October 21, 2015, Plaintiff successfully registered the service mark "San Diego Spirits Festival" with the Secretary of State of California. (See Certificate of Registration of Service Mark, attached to Compl. as Ex. 14, ECF no. 1-2, pp. 39-44.) As discussed below, Plaintiff alleges in their Complaint that Defendant's actions infringed upon two of Plaintiff's marks: the San Diego Spirits Festival mark ("SDSF Mark") and the San Diego International Spirits Bottle Competition mark ("Competition Mark"). (Compl. ¶ 66.) Neither Mark is registered

with the United States Patent and Trademark Office, nor has the Competition

Mark been registered in California.

**B.     Alleged Infringement**

Defendant 22nd District Agricultural Association is a public association

formed pursuant to the California Food and Agriculture Code for the express

purpose of "[h]olding fairs, expositions, and exhibitions for the purpose of

exhibiting all of the industries and industrial enterprises, resources and products

of every kind or nature of the state with a view toward improving, exploiting,

encouraging, and stimulating them." Cal. Food & Agric. Code § 3951(a).

In 2013 Defendant allegedly contacted Plaintiff to discuss Defendant's

interest in hosting a cocktail event during the San Diego County Fair. (Compl. ¶

35.) Alan and Elizabeth Edwards, the principals of the SDSF, allegedly shared

important details relating to the business and operation structure of the SDSF at

a meeting in July 2013 to discuss the potential partnership,. (Compl. ¶ 38.)

Following the July 2013 meeting, Plaintiff allegedly did not hear from the

Defendant again until Plaintiff learned that Defendant intended to hold a

competing festival at the San Diego Country Fair in 2015. (Compl. ¶¶ 41-42.)

Defendant's festival is named, "Distilled: San Diego Spirit & Cocktail Festival,"

and includes a spirits competition, named "Distilled: San Diego Spirit & Cocktail

Competition." (Compl. ¶ 42.)

Plaintiff alleges that the SDSF has suffered as a direct result of Defendant's

cocktail festival. (Compl. ¶ 24.) Moreover, Plaintiff alleges that potential

participants are routinely confused because of the similarity between the

Plaintiff's marks—the SDSF Mark and the Competition Mark—and Defendant's

advertisements. (Compl. ¶ 43.)

Plaintiff's Complaint alleges federal service mark infringement, federal

dilution of a famous mark, violation of federal unfair competition laws, state

service mark infringement, state service mark dilution, violations of state unfair

competition laws, and breach of Defendant's fiduciary duty. Defendant moves to dismiss.

## II. DISCUSSION

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) should be granted only where a plaintiff's complaint lacks a "cognizable legal theory" or sufficient facts to support a cognizable legal theory. Balistreri v. Pacifica Police Dept., 901 F.2d 696, 699 (9th Cir. 1988). When reviewing a motion to dismiss, the allegations of material fact in plaintiff's complaint are taken as true and construed in the light most favorable to the plaintiff. See Parks Sch. of Bus., Inc. v. Symington, 51 F.3d 1480, 1484 (9th Cir. 1995).

Although detailed factual allegations are not required, factual allegations "must be enough to raise a right to relief above the speculative level." Bell Atlantic v. Twombly, 550 U.S. 544, 555 (2007). "A plaintiff's obligation to prove the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not show[n] that the pleader is entitled to relief." Ashcroft v. Iqbal, 565 U.S. 662, 679 (2009) (internal quotation marks omitted). Only a complaint that states a plausible claim for relief will survive a motion to dismiss. Id.

## A.    Federal Claims

Plaintiff alleges infringement pursuant to 15 U.S.C. § 1114, dilution pursuant to 15 U.S.C. § 1125(c), and unfair competition pursuant to 15 U.S.C. § 1125(a). Each claim is discussed in turn.

//

//

4

15cv2956 BTM (BLM)

1

### 1.   Infringement

The first cause of action alleges service mark infringement pursuant to 15 U.S.C. § 1114. As Defendant notes, section 1114 applies to infringement of registered marks. See 15 U.S.C. § 1114(1)(a) ("Any person who shall, without consent of the registrant, use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark . . .") (emphasis added). Plaintiff does not allege that either the SDSF Mark or the Competition Mark are federally registered. Plaintiff argues that the Complaint nonetheless properly alleges a violation of the Lanham Act pursuant to 15 U.S.C. § 1125(a). However, the sufficiency of Plaintiff's allegations pursuant to section 1125(a) are addressed in the Court's discussion of Plaintiff's third cause of action, infra section II.A.3., and do not apply to the first cause of action.

Because neither mark is federally registered, Defendant's motion to dismiss Plaintiff's first cause of action is **GRANTED**.

### 2.   Dilution

Plaintiff's second cause of actions alleges dilution of a famous mark pursuant to 15 U.S.C. § 1125(c). In order to bring a claim for service mark dilution, a plaintiff must show that, "(1) the mark is famous and distinctive; (2) the defendant is making use of the mark in commerce; (3) the defendant's use began after the mark became famous; and (4) the defendant's use of the mark is likely to cause dilution by blurring or dilution by tarnishment." Jada Toys, Inc. v. Mattel, Inc., 518 F.3d 628, 634 (9th Cir. 2007) (citing 15 U.S.C. § 1125(c)(1)). Here, the parties do not dispute that Defendant began using its marks after Plaintiff or that Defendant is using its marks in commerce.

#### (a)   Fame

Section 1125 states that, "a mark is famous if it is widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner." 15 U.S.C. § 1125(c)(2)(A). When

determining whether a mark is famous, courts are instructed to consider the following factors:

> (i) The duration, extent, and geographic reach of advertising and publicity of the mark, whether advertised or publicized by the owner or third parties.
> (ii) The amount, volume, and geographic extent of sales of goods or services offered under the mark.
> (iii) The extent of actual recognition of the mark.
> (iv) Whether the mark was registered . . . on the principal register.

15 U.S.C. § 1125(c)(2)(A)(i)-(iv). "[A] mark usually will achieve broad-based fame only if a large portion of the general consuming public recognizes that mark." Thane Int'l, Inc. v. Trek Bicycle Corp., 305 F.3d 894, 911 (9th Cir. 2002). Here, the factors weigh against Plaintiff.

First, with respect to the duration, extent, and geographic reach of the Marks, the Complaint asserts that Plaintiff's Marks have been featured on various local television and radio stations (Compl. ¶ 27) and that the Marks were featured in an online article for Fodor's magazine and Premier Traveler Magazine. (Compl. ¶ 30.d.) The SDSF Mark has been advertised since 2009, while the Competition Mark has been advertised since 2013. Although two internet articles have mentioned the festival, the SDSF Mark has not otherwise been advertised extensively to the general consuming public. See Faegin v. LivingSocial Inc., No. 14cv0418 WQH, 2015 WL 1198654, at *9 (S.D. Cal. Mar. 16, 2015) (holding that a cleaning service which advertised in San Diego County failed to plead facts that demonstrated the company was recognized by the general consuming public). Publicity for the SDSF has primarily occurred on local news and radio networks, and the number of attendees and participation from vendors is not widespread enough to constitute fame. Accordingly, the first factor favors Defendant because Plaintiff has not demonstrated that its Marks have reached the general consuming public.

1   Second, with respect to the amount, volume, and geographic extent of
2   services offered under the Marks, the Complaint asserts that the festival has
3   achieved over 3,000 attendees and eighty vendor participants. (Compl. ¶ 23.)
4   While this figure may be impressive locally, such participation does not
5   demonstrate that Plaintiff's Marks have extensively reached the general
6   consuming public. See Pinterest, Inc. v. Pintrips, Inc., 140 F. Supp. 3d 997, 1033
7   (N.D. Cal. 2015) (holding that the Pinterest mark did not achieve the requisite
8   level of fame even though Pinterest had approximately five million monthly users
9   during the alleged dilution); but see Parts.com, LLC v. Yahoo Inc., No. 13cv1078
10  JLS, 2014 WL 2573321, at *4 (S.D. Cal. June 9, 2014) (holding that $5 million in
11  annual revenue and tens of thousands of customers shifted the second factor in
12  favor of the plaintiff). Because Plaintiff festival occurs once a year with only 3,000
13  attendees, this factor weighs in favor of Defendant.

14  Third, with respect to the extent of the actual recognition of the Marks, the
15  Complaint asserts that for five years, the San Diego Mayor has delivered a
16  Proclamation greeting guests and participants, and that a day each year has
17  been designated "San Diego Spirits Festival Day" beginning in 2013. (Compl. ¶
18  31.) The Complaint also notes that three celebrities have attended the event to
19  promote their spirit lines. (Compl. ¶ 31.) As above, local recognition is insufficient.
20  Although the San Diego Mayor has recognized the festival, the Complaint fails to
21  allege any national recognition of the Marks. The Complaint alleges that the
22  Marks have achieved a "variety of awards, recognition, and accolades at the
23  local, national, and international levels," but such conclusory allegations are
24  supported with local examples of recognition. See Arcsoft, Inc. v. Cyberlink
25  Corp., 153 F. Supp. 3d 1057, 1067 (N.D. Cal. 2015) (noting that conclusory
26  allegations of widespread recognition, without more detail, are insufficient to give
27  rise to a plausible inference that a mark is nationally recognized). This factor also
28  favors Defendant.

7

15cv2956 BTM (BLM)

1    Finally, neither Mark is federally registered. Therefore, because the factors

2    weigh in favor of Defendant, Plaintiff has failed to sufficiently allege facts that

3    support its allegations that the Marks are famous. See Jada Toys, Inc. v. Mattel,

4    Inc.,518 F.3d 628, 635 (9th Cir. 2007) (holding that a reasonable trier of fact

5    could conclude that the "Hot Wheels" mark is famous given that the mark had

6    been in use for thirty-seven years, with three billion units sold).

7    Because Plaintiff has failed to allege that either Mark is famous, Plaintiff's

8    federal dilution claim fails. Accordingly, Defendant's motion to dismiss Plaintiff's

9    second cause of action is **GRANTED**.

10   As noted below, the Court **GRANTS** Plaintiff's request for leave to amend.

11   Accordingly, the following discussion is intended to guide the parties should

12   Plaintiff amend its Complaint with facts sufficient to establish that its Marks are

13   famous.

14                    (b)    Likelihood of Dilution by Tarnishment or Blurring

15   Dilution by tarnishment is "association arising from the similarity between a

16   mark or trade name and a famous mark that harms the reputation of the famous

17   mark." 15 U.S.C. § 1125(c)(2)(C). Here, the Complaint alleges Defendant "has

18   tarnished the distinctive quality of" Plaintiff's allegedly famous Marks. (Compl. ¶

19   98.) However, the Complaint does not allege how or why Defendant's use of its

20   marks are harmful to Plaintiff's reputation. Without more, Plaintiff fails to plead

21   dilution by tarnishment. See Parts.com, LLC, 2014 WL 2573321, at *6. Even if

22   Plaintiff can demonstrate its Marks are famous, Plaintiff has failed to allege that

23   Defendant's use of its mark in commerce has harmed the reputation of Plaintiff's

24   Marks.

25   On the other hand, dilution by blurring is "association arising from the

26   similarity between a mark or trade name and a famous mark that impairs the

27   distinctiveness of the famous mark." 15 U.S.C. § 1125(c)(2)(B). Courts are

28   instructed to consider relevant factors, including:

(i) The degree of similarity between the mark or trade name and the famous mark;

(ii) The degree of inherent or acquired distinctiveness of the famous mark;

(iii) The extent to which the owner of the famous mark is engaging in substantially exclusive use of the mark;

(iv) The degree of recognition of the famous mark;

(v) Whether the user of the mark . . . intended to create an association with the famous mark;

(vi) Any actual association between the mark or trade name and the famous mark.

Id.

With respect to the first factor, Plaintiff alleges that its Marks and Defendant's marks are confusingly similar in that they both contain the words "San Diego," "Spirit," and "Festival." (Compl. ¶¶ 44, 45, 95.) With respect to the second factor, Plaintiff alleges that its Marks are descriptive and have acquired secondary meaning. (Compl. ¶ 84.) With respect to the third and fifth factors, Plaintiff alleges that it has used the SDSF Mark exclusively since 2009 and the Competition Mark since 2013 (Compl. ¶ 14, 20), and that Defendant attempted to "pass of its services and marks in commerce as those of SDSF." (Compl. ¶ 97.) With respect to the sixth factor, Plaintiff alleges that former attendees and participants in its festival have contacted Plaintiff with questions regarding Defendant's event, thereby demonstrating actual association between the competing marks. (Compl. ¶ 54.)

Assuming Plaintiff can sufficiently plead fame, Plaintiff has otherwise properly alleged facts sufficient to state a claim for dilution by blurring.

### 3.    *Unfair Competition*

Plaintiff's third cause of action alleges violations of 15 U.S.C. § 1125(a). In general, section 1125(a) is a federal claim for infringement of unregistered marks. See S. Cal. Darts Ass'n v. Zaffina, 762 F.3d 921, 926 (9th Cir. 2014); 5 J. McCarthy, Trademarks and Unfair Competition § 27:14 (4th ed. 2016). To state a

claim under section 1125(a), "a plaintiff must prove two basic elements: (1) it has a valid, protectable []mark, and (2) [the defendant's] use of the mark is likely to cause confusion." <u>Zaffina</u>, 762 F.3d at 929 (internal citation and quotation omitted). This first element is further "comprised of two sub-parts: the mark's protectability and the plaintiff's ownership of the mark." <u>Id.</u> Therefore, a proper claim must allege that, (a) the marks are protectable; (b) plaintiff owned the marks; and (c) defendant's use of its marks is likely to cause confusion. <u>See</u> <u>Id.</u> Here, Plaintiff's ownership of the Marks is not in dispute.

(a)    Protectability

"Whether a mark is protectable depends on its degree of distinctiveness." <u>Zaffina</u>, 762 F.3d at 929. The five traditional categories of distinctiveness include generic, descriptive, suggestive, arbitrary, and fanciful. <u>See</u> <u>Two Pesos, Inc. v. Taco Cabana, Inc.</u>, 505 U.S. 763, 768 (1992). Marks that are suggestive, arbitrary, and fanciful are inherently distinctive and entitled to protection. <u>Id.</u> Marks that are descriptive, however, are not inherently distinctive and are only protectable if the mark has acquired secondary meaning—that is, that the mark "has become distinctive of the applicant's goods in commerce." <u>Id.</u> at 768 (citing 15 U.S.C. § 1052(f)).

Descriptive marks "define qualities or characteristics of a product in a straightforward way that requires no exercise of the imagination to be understood." <u>Entrepreneur Media, Inc. v. Smith</u>, 279 F.3d 1135, 1141-42 (9th Cir. 2002) (citing <u>Kendall-Jackson Winery, Ltd. v. E. & J. Gallo Winery</u>, 150 F.3d 1042, 1047 n.8 (9th Cir. 1998)). Both the SDSF Mark and the Competition Mark are arguably descriptive.[1] They define the characteristics of the service—a spirits //

---

[1] Because Plaintiff asserts that its Marks have achieved a secondary meaning (<u>see</u> Compl. ¶¶ 83-84), the Court interprets Plaintiff's Complaint to allege that its Marks are descriptive marks that, although not inherently distinctive, are protectable because they have achieved a secondary meaning.

festival and a spirits bottle competition—in a straightforward manner. Therefore, the marks require a secondary meaning in order to be entitled to protection.

In general, secondary meaning is a question of fact that is to be decided by the jury. Miller v. Glenn Miller Prods., Inc., 454 F.3d 975, 991 (9th Cir. 2006). Here, Plaintiff alleges that the SDSF Mark and the Competition Mark have acquired secondary meaning. (Compl. ¶ 84.) The Complaint alleges that the Marks have been extensively advertised and publicized on the radio, in print, and by television news programs. At the pleading stage, such allegations are sufficient to satisfy the element of protectability. See Glassbaby, LLC v. Provide Gifts, LLC, No. C11-380 MJP, 2011 WL 2218583, at *2 (W.D. Wash. June 6, 2011) (holding that similar allegations satisfied the distinctiveness element for a trademark claim to survive a motion to dismiss).

### (b)    Likelihood of Confusion

Courts typically apply the eight factors set out in AMF, Inc. v. Sleekcraft Boats, 599 F.2d 341 (9th Cir. 1979) to determine whether the defendant's use of its mark is likely to cause confusion with the plaintiff's mark. Rearden LLC v. Rearden Commerce, Inc., 683 F.3d 1190, 1199 (9th Cir. 2012). These factors include: "(1) the strength of the mark; (2) proximity of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) type of goods and the degree of care likely to be exercised by the purchaser; (7) defendant's intent in selecting the mark; and (8) likelihood of expansion of the product lines." Id.

Here, Plaintiff alleges that consumers have already demonstrated confusion between the two festivals. Both Plaintiff's Marks and the alleged infringing marks relate to cocktail festivals and spirit bottle competitions. Moreover, Plaintiff alleges that Defendant began using its mark after consulting Plaintiff about the SDSF festival. Such allegations are sufficient to satisfy this element for a trademark claim at the pleading stage.

15cv2956 BTM (BLM)

1    Accordingly, because Plaintiff has alleged facts sufficient to state a claim

2    pursuant to 15 U.S.C. § 1125(a), Defendant's motion to dismiss Plaintiff's third

3    cause of action is **DENIED**.

4

5    **B.   State Claims**

6        Plaintiff alleges state service mark infringement, state service mark dilution,

7    violation of California's unfair competition statute, and breach of fiduciary duty.

8    The sufficiency of Plaintiff's remaining claims are discussed in turn.

9        *1.    Service Mark Infringement*

10       Plaintiff's fourth cause of action alleges infringement in violation of

11   California Business and Professions Code § 14245. As Defendant points out,

12   section 14245 only applies to owners of registered trademarks. See Cal. Bus. &

13   Prof. Code § 14245(a) ("A person who does any of the following shall be subject

14   to a civil action by the owner of the registered mark . . . .") (emphasis added).

15   Here, only the SDSF Mark is registered in California.

16       Claims for infringement under California law are "substantially congruent

17   with federal claims and thus lend themselves to the same analysis." Grupo

18   Gigante SA De CV v. Dallo & Co., Inc., 391 F.3d 1088, 1100 (9th Cir. 2004)

19   (internal citations omitted). As stated above, Plaintiff has sufficiently alleged a

20   claim for service mark infringement pursuant to 15 U.S.C. § 1125(a) for the

21   SDSF Mark. Therefore, Defendant's motion to dismiss Plaintiff's fourth cause of

22   actions is **GRANTED** as it pertains to the Competition Mark, but **DENIED** as it

23   pertains to the SDSF Mark.

24       *2.    Unfair Competition*

25       Plaintiff's sixth cause of action alleges a violation of California Business

26   and Professions Code § 17200, generally known as California's Unfair

27

28

15cv2956 BTM (BLM)

Competition Law ("UCL").[2] Defendant argues that, as a Government entity, it is immune from liability. Defendant cites to California Government Code § 815, which states that, "[e]xcept as otherwise provided by statute[,] a public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person." Cal. Gov't Code § 815(a).

The UCL generally prohibits the use of any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. A UCL claim may be brought against a "person," which is defined in section 17201 to include "natural persons, corporations, firms, partnerships, joint stock companies, associations and other organizations of persons." Id. § 17201. Defendant argues that because state institutions are not included in the UCL's definition of a person, Defendant cannot be sued pursuant to section 17200. The Court agrees.

As explained above, Defendant is an agricultural district established pursuant to California Food and Agricultural Code § 3951. According to § 3953, Defendant is a state institution. See Cal. Food & Agric. Code § 3953 ("Each association is a state institution."). The UCL does not include state institutions in its definition of a "person." Therefore, because the UCL does not expressly hold state institutions liable, Defendant is immune pursuant to California Government Code § 815. See In re Cell Tower Litig., 807 F. Supp. 2d 928, 945 (S.D. Cal. 2011) (holding that the city of San Diego is not a "person" within the meaning of the UCL), overruled on other grounds by Am. Tower Corp. v. City of San Diego, 763 F.3d 1035 (9th Cir. 2014); see also Tuchscher Dev. Enters., Inc. v. San Diego Unified Port Dist., 106 Cal. App. 4th 1219, 1243-44 (Cal. Ct. App. 2003) //

---

[2] Plaintiff's sixth cause of action also references California's false advertising statute, Cal. Bus. & Prof. Code § 17500. However, the heading for this cause of action in the Complaint states, "Sixth Cause of Action for State Unfair Competition." Moreover, nowhere in the Complaint does Plaintiff allege that Defendant made a false or misleading statement, or disseminated false or misleading information. Therefore, the Court analyzes Plaintiff's sixth cause of action as an unfair competition claim pursuant to section 17200.

15cv2956 BTM (BLM)

(holding that a port district is not a "person" within the meaning of § 17201 because it is a government entity).

Plaintiff's argument that Defendant was not acting in a governmental capacity is unpersuasive. Section 3951 states that agricultural association are formed for the purpose of, "holding fairs, expositions and exhibitions for the purpose of exhibiting all of the industries and industrial enterprises, resources and products of every kind or nature of the state with a view toward improving, exploiting, encouraging, and stimulating them." Cal. Food & Agric. Code § 3951. Defendant's alleged actions include holding a cocktail festival and using service marks that allegedly infringe on Plaintiff's Marks. Specifically, Defendant's actions of holding a cocktail festival are within the purpose of the statute. Plaintiff has not cited any authority, and the Court has not found any, that supports the proposition that Defendant, as a state institution, can be held liable under the UCL.

Accordingly, Defendant's motion to dismiss Plaintiff's sixth cause of action is **GRANTED**.

### 3.   *Breach of Fiduciary Duty and Trademark Dilution Claims*

As to Plaintiff's remaining claims, Defendant argues that Plaintiff is barred from bringing a breach of fiduciary duty or California trademark dilution claim because Plaintiff failed to exhaust administrative remedies. The Court agrees.

California Food and Agricultural Code § 3955 states that, "[c]laims against an association shall be presented to the Department of General Services . . . ." On December 2, 2015, Plaintiff submitted a Government Claim Form which stated, "[Defendant] is violating federal, state, and common law by utilizing the name 'Distilled: San Diego Spirit & Cocktail Festival' and 'San Diego Spirit & Cocktail Competition' to describe its annual cocktail festival, which is confusingly similar to claimant's marks . . . ." (Government Claim Form, attached to Compl. as Ex. 15, at 2.) The description of the specific damage or injury alleges,

"[t]rademark infringement and monetary damages to [Plaintiff's] goodwill and branding." (Government Claim Form 2.)

Because the Government Claim Form only alleges trademark infringement, Plaintiff is precluded from asserting its claims for state trademark dilution and breach of fiduciary duty. See State v. Superior Court, 32 Cal. 4th 1234, 1243 (2004) (noting that the claim presentation requirement requires a plaintiff to "submit a timely claim for money or damages to a public entity in order to maintain an action against that entity").[3]

Moreover, even if Plaintiff had asserted its fiduciary duty and dilution claims in the Government Claim Form, Plaintiff's claims would nonetheless be dismissed. First, Plaintiff's seventh cause of action alleges a common law claim for breach of fiduciary duty. As discussed above, "[i]t is a well-settled rule that 'there is no common law government tort liability in California; and except as otherwise provided by statute, there is no liability on the part of a public entity for any act or omission of itself, a public employee, or any other person." Green Valley Landowners Association v. City of Vallejo, 241 Cal. App. 4th 425, 441-42 (Cal. Ct. App. 2015) (citing Cowing v. City of Torrance, 60 Cal. App. 3d 757, 761 (Cal. Ct. App. 1976)). This applies equally to a common law claim for breach of fiduciary duty. See Fidge v. Lake Cnty. Bd. of Supervisors, No. C 10-3953 CRB, 2011 WL 1364187, at *2 (N.D. Cal. Apr. 11, 2011) (holding that public entities are immune from a common law breach of fiduciary duty claim).

Second, a claim for dilution under California law is analyzed under the same framework as a claim for dilution under federal law. See Jada Toys, 518 F.3d at 634. As discussed above, Plaintiff has failed to allege facts sufficient to meet the fame requirement.

---

[3] Plaintiff's argument that Defendant had notice of the dilution and fiduciary duty claims is unavailing because the Government Claim Form only alleges infringement. Therefore, Defendant never had notice that Plaintiff intended to bring other claims, and Plaintiff has failed to exhaust administrative remedies.

For these reasons, Defendant's motion to dismiss Plaintiff's fifth and seventh causes of action for California service mark dilution and breach of fiduciary duty is **GRANTED**.

### III. CONCLUSION

For the reasons discussed above, Defendant's motion to dismiss is **DENIED IN PART** and **GRANTED IN PART**. Plaintiff's motion is **DENIED** as to the third cause of action and the fourth cause of action regarding the SDSF Mark. Plaintiff's motion is **GRANTED** as to the first, second, fifth, sixth, and seventh causes of action, and as to the fourth cause of action regarding the Competition Mark.

Accordingly, Plaintiff's first, fifth, sixth, and seventh causes of action are **DISMISSED with prejudice** in their entirety. Plaintiff's fourth cause of action as it pertains to the unregistered Competition Mark is also **DISMISSED with prejudice**. Plaintiff's second cause of action is **DISMISSED without prejudice**.

Finally, the Court **GRANTS** Plaintiff's request for leave to amend its second cause of action. Plaintiff shall file a First Amended Complaint within twenty (20) days of the filing of this Order.

**IT IS SO ORDERED.**

Dated:  August 31, 2016

Barry Ted Moskowitz, Chief Judge
United States District Court

15cv2956 BTM (BLM)