UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| AEGIS SOFTWARE, INC. dba SAN DIEGO SPIRITS FESTIVAL and SAN DIEGO SPIRITS BOTTLE COMPETITION,<br><br>Plaintiff,<br><br>v.<br><br>22nd DISTRICT AGRICULTURAL ASSOCIATION,<br><br>Defendant. | Case No.: 15cv2956 BTM (BLM)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS [ECF NO. 28]** |
|---|---|

On September 19, 2016, Plaintiff Aegis Software, Inc., filed a First Amended Complaint ("FAC or "Complaint") against Defendant 22nd District Agricultural Association. (ECF No. 27.) On October 3, 2016, Defendant filed a motion to dismiss. (ECF No. 28.) For the reasons discussed below, Defendant's motion to dismiss is granted in part and denied in part.

## I. FACTUAL BACKGROUND

Plaintiff Aegis Software hosts the "San Diego Spirits Festival" ("SDSF"), an annual specialty cocktail and spirits festival held in San Diego. (Compl. ¶¶ 8–10.)

Plaintiff held its inaugural festival on June 5–7, 2009. (Compl. ¶ 13.) Given the event's success, Plaintiff decided to host the event on an annual basis and registered the fictitious business name "San Diego Spirits Festival" with the San Diego County Clerk. (Compl. ¶¶ 14–15.) In 2014, Plaintiff held its 6th annual SDSF which attracted "approximately 3800 attendees (a 35% increase from the prior year) and 80 'Spirit Brands' (a 23% increase from the prior year)." (Compl. ¶ 27.) Plaintiff alleges that ninety-five percent of the festival participants are headquartered outside of San Diego, with sixty-percent of those participants being located outside of California. (Compl. ¶ 41.)

The SDSF is marketed each year through a variety of online, radio, television, and print medias, as well as through the marketing channels of each of the participants taking part in the event. (Compl. ¶¶ 30, 39.) Local news and media outlets have covered and promoted the SDSF, and the SDSF has been featured in various online publications associated with alcoholic beverages. (Compl. ¶¶ 30–31.) Travel publications catered to domestic and international travelers, including Fodor's Travel and Premier Traveler Magazine, have also featured the SDSF. (Compl. ¶¶ 35.e–g.) In 2013, Fodor's Travel recognized the SDSF as one of the "Best Cocktail Festivals in America." (Compl. ¶ 36c.) Since 2013, the San Diego mayor has proclaimed a day in August each year as "San Diego Spirits Festival Day." (Compl. ¶¶ 36.d–f.)

In 2013, Plaintiff hosted its first annual "San Diego International Spirits Bottle Competition" ("Competition"). (Compl. ¶ 21.) The Competition takes place during the SDSF and features applicants from around the world that submit new spirits for competition and judging. (Compl. ¶¶ 22.) In 2013, the Competition featured 35 competitors, and in 2014 the Competition featured 86 competitors. (Compl. ¶¶ 26–27.) Plaintiff alleges that thirty percent of the Competition's participants are located in California, but outside of San Diego, fifty percent are located in the U.S., but outside of California, and twenty percent of the

participants are located internationally. (Compl. ¶ 42.)

Plaintiff further alleges that both the SDSF and Competition have attracted the attention of several celebrities including Dennis Rodman, Vince Neil, Ron Jeremy, and Cheech Marin. (Compl. ¶¶ 36.h–k.) The Competition has also attracted the attention of nationally recognized judges. (Compl. ¶¶ 36.m–o.)

## A. The SDSF Mark and Competition Mark

On October 21, 2015, Plaintiff successfully registered the service mark "San Diego Spirits Festival" with the Secretary of State of California. (*See* Certificate of Registration of Service Mark, attached to Compl. as Ex. 14, ECF no. 1-2, pp. 39-44.) As discussed below, Plaintiff alleges in its Complaint that Defendant's actions infringed upon two of Plaintiff's marks: the San Diego Spirits Festival mark ("SDSF mark") and the San Diego International Spirits Bottle Competition mark ("Competition mark"). (Compl. ¶ 97.) Neither mark is registered with the United States Patent and Trademark Office, nor has the Competition mark been registered in California.

## B. Alleged Infringement

Defendant is a public association formed pursuant to the California Food and Agriculture Code for the express purpose of "[h]olding fairs, expositions, and exhibitions for the purpose of exhibiting all of the industries and industrial enterprises, resources and products of every kind or nature of the state with a view toward improving, exploiting, encouraging, and stimulating them." Cal. Food & Agric. Code § 3951(a).

In 2013, Defendant allegedly contacted Plaintiff to discuss a potential partnership. (Compl. ¶ 47.) Defendant was particularly interested in holding an annual event showcasing cocktails during the San Diego County Fair. (Compl. ¶ 48.) At a meeting with Defendant in July 2013, Alan and Elizabeth Edwards, the principals of the SDSF, allegedly shared important details relating to the business

model and operational structure of the SDSF. (Compl. ¶ 51.) Following the July 2013 meeting, Plaintiff did not hear from Defendant again. (Compl. ¶ 54.) Plaintiff thereafter discovered that Defendant intended to hold a competing festival at the San Diego Country Fair in June 2015. (Compl. ¶¶ 54–55.) Defendant named its festival "Distilled: San Diego Spirit & Cocktail Festival," which includes a spirits competition named "Distilled: San Diego Spirit & Cocktail Competition." (Compl. ¶ 55.)

Plaintiff alleges that the SDSF has suffered as a direct result of Defendant's cocktail festival. (Compl. ¶ 94.) In 2015, the SDSF's number of attendees and participants decreased from the prior year to only 3500 attendees and 68 participating "Spirit Brands." (Compl. ¶¶ 74–75.) Moreover, Plaintiff alleges that potential attendees and participants are routinely confused because of the similarity between the events' names, as well as Plaintiff's marks—the SDSF mark and the Competition mark—and Defendant's advertisements. (Compl. ¶¶ 56–58, 61–69.)

Plaintiff's FAC alleges three causes of action: (1) federal dilution of a famous mark; (2) violation of federal unfair competition laws; (3) and state service mark infringement. Defendant moves to dismiss Plaintiff's first and third claims.

## II. DISCUSSION

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) should be granted only where a plaintiff's complaint lacks a "cognizable legal theory" or sufficient facts to support a cognizable legal theory. *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988). When reviewing a motion to dismiss, the allegations of material fact in plaintiff's complaint are taken as true and construed in the light most favorable to the plaintiff. *Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995).

Although detailed factual allegations are not required, factual allegations "must be enough to raise a right to relief above the speculative level." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007). "A plaintiff's obligation to prove the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not show[n] that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 565 U.S. 662, 679 (2009) (internal quotation marks omitted). Only a complaint that states a plausible claim for relief will survive a motion to dismiss. *Id.*

**A.     Federal Dilution of Famous Mark Claim**

Plaintiff's first cause of action is for dilution of a famous mark pursuant to 15 U.S.C. § 1125(c), the Trademark Dilution Revision Act ("TDRA"). In order to bring a claim for service mark dilution, a plaintiff must show that: "(1) the mark is famous and distinctive; (2) the defendant is making use of the mark in commerce; (3) the defendant's use began after the mark became famous; and (4) the defendant's use of the mark is likely to cause dilution by blurring or dilution by tarnishment." *Jada Toys, Inc. v. Mattel, Inc.*, 518 F.3d 628, 634 (9th Cir. 2008) (citing 15 U.S.C. § 1125(c)(1)). Here, because the Court has previously held that Plaintiff sufficiently pled all but the fame element of this claim, the Court's analysis focuses on whether Plaintiff has remedied those deficiencies in its FAC.

**1. Fame**

To meet the "famousness" element of protection under the TDRA, the mark must be "widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner." 15 U.S.C. § 1125(c)(2)(A). When determining whether a mark is famous, courts are instructed to consider the following factors:

> (i) The duration, extent, and geographic reach of advertising and publicity of the mark, whether advertised or publicized by the owner or third parties.
> (ii) The amount, volume, and geographic extent of sales of goods or services offered under the mark.
> (iii) The extent of actual recognition of the mark.
> (iv) Whether the mark was registered . . . on the principal register.

15 U.S.C. § 1125(c)(2)(A)(i)-(iv). The famousness prong of the claim is meant to "carefully [limit] the class of trademarks eligible for dilution protection." *Avery Dennison Corp. v. Sumpton*, 189 F.3d 868, 875 (9th Cir. 1999). "[A] mark usually will achieve broad-based fame only if a large portion of the general consuming public recognizes that mark. Put another way, the mark must be a household name." *Thane Int'l, Inc. v. Trek Bicycle Corp.*, 305 F.3d 894, 911 (9th Cir. 2002); *See, e.g.*, *Nike, Inc. v. Nikepal Int'l, Inc.*, 2007 WL 2782030, at *5–6 (E.D. Cal. Sept. 10, 2007) (weighing the factors enumerated under 15 U.S.C. § 1125(c)(2)(A) and finding that Nike constitutes a famous mark). Though in its FAC Plaintiff alleges additional facts in support of its federal dilution claim, it nevertheless falls short of pleading fame.

As to the first factor, while Plaintiff attempts to demonstrate that its advertisement and publicity have a wide geographic reach, the factor nevertheless weighs in Defendant's favor. Plaintiff alleges that the marks are advertised in a variety of "local, national and international television, Internet, and radio programs each year," as well as by the participants taking part in the events. (Compl. ¶¶ 30, 39.) In an effort to remedy the deficiencies in its Complaint, Plaintiff places emphasis on the fact that its marks have been featured on the Women's Radio Network, which "has a potential reach of 2 million daily," and international traveler magazines such as Fodors Travel and Premier Traveler Worldwide Magazine. (Compl. ¶¶ 33–34, 35.e–35.g.) Plaintiff alleges that out of "the total publications advertising the [SDSF] and

[Competition], twenty-three percent (23%) are local publications; fifteen percent (15%) are regional publications; forty-six percent (46%) are national publications; and fifteen percent (15%) are international publications." (Compl. ¶ 35.j.) While it appears that the publications are geographically diverse, the SDSF and Competition are only publicized a handful of times each year by a limited number of publications and networks. Thus, Plaintiff's FAC fails to establish that the marks' advertisement and publicity have reached the general consuming public. *See, e.g.*, *Jada Toys, Inc.*, 518 F.3d at 635 (holding that a reasonable jury could find that "HOT WHEELS" was a famous mark given that the mark has been used for over thirty-seven years; 350 million dollars have been spent on advertising; three billion HOT WHEELS units have been sold since the inception of the mark; and HOT WHEELS are sold in all fifty states and throughout the world.)"

     Plaintiff's FAC also fails to plead sufficient facts to shift the second factor in its favor. In 2014, its highest attendance year, the festival attracted about 3800 attendees and 80 participating spirit brands, while the Competition received eighty-six bottle entries from around the world. (Compl. ¶ 27.) Plaintiff alleges that ninety-five percent of those participants are headquartered outside of San Diego and seventy percent of the brands participating in the Competition are located outside of California. (Compl. ¶¶ 41–43.) Nonetheless, given the relatively small sample size, such participation still fails to demonstrate that Plaintiff's marks have extensively reached the *general* consuming public in the United States. *See Starbucks Corp. v. Glass*, No. 16-CV-03937, 2016 WL 6126255, at * 3 (C.D. Cal. Oct. 20, 2016) (holding that the Starbucks marks are unmistakably famous given their worldwide use in approximately 22,000 retail locations and billions of transactions completed every year involving products that bear the marks).

     With respect to the extent of the actual recognition of the marks, Plaintiff's FAC alleges that both the SDSF and Competition have enjoyed the support of

celebrities including Cheech Marin, and reputable industry professional judges Ed Meek and Andrew Faulkner. (Compl. ¶¶ 36.a, 36.m–36.p.) While these facts may demonstrate a rising awareness of the marks, they still fall short of establishing that the SDSF and Competition marks are "mature and well-known" brands. *Fruit of Loom, Inc. v. Girouard*, 994 F.2d 1359, 1363 (9th Cir. 1990) ("We need not decide the exact degree of strength a protectable mark must reach, but it must at least be mature and well-known.").

Lastly, it remains undisputed that neither mark is federally registered. Therefore, Plaintiff has failed to sufficiently allege facts that support its allegations that its marks are famous.

**2. Secondary Meaning**

Relying on trademark infringement cases, Plaintiff argues that because its marks are deemed descriptive under the secondary meaning doctrine, they are subject to protection. A plaintiff asserting trademark infringement must show that its unregistered mark is either inherently distinctive or has acquired a secondary meaning. *Int'l Jensen, Inc. v. Metrosound U.S.A., Inc.*, 4 F.3d 819, 823 (9th Cir. 1993). "Secondary meaning is the mental association by a relevant segment of consumers and potential consumers between the alleged mark and the source of the product." *Duncan McIntosh Co. Inc. v. Newport Dunes Marina LLC*, 324 F. Supp. 2d 1078, 1082 (C.D. Cal. 2004). However, "[i]nherent distinctiveness or the acquisition of secondary meaning merely establishes the minimum threshold necessary for trademark status: section 43(c) requires a great deal more." 4 J. Thomas McCarthy, Trademarks and Unfair Competition § 24:104 (4th ed. 1997).

To establish a dilution claim, "a designation must have a degree of distinctiveness and 'strength' far beyond the minimum which is needed to qualify as a trademark." *Id.* In *Avery Dennison Corp. v. Sumpton*, the Ninth Circuit affirmed this principle and held that a plaintiff failed to satisfy the famousness prong despite its marks acquiring secondary meaning because "famousness

requires a showing greater than mere distinctiveness . . . ." 189 F.3d at 877.

Here, as already discussed above, Plaintiff's marks have not achieved the level of fame required under the TDRA. Thus, even if Plaintiff's marks have achieved trademark status through secondary meaning, it nevertheless is insufficient for establishing dilution of its marks.

**3. Niche Market**

Alternatively, Plaintiff contends that its marks have achieved fame in a specialized market which is sufficient to demonstrate famousness under the TDRA. Plaintiff relies on the Ninth Circuit's holdings in *Avery Dennison Corp.*, 189 F.3d 868, and *Thane Int'l, Inc. v. Trek Bicycle Corp.*, 305 F.3d 894, that fame in a specialized market is enough to satisfy the famousness prong under the federal anti-dilution statute. But as Defendant correctly notes, the Ninth Circuit's decisions in *Avery Dennison Corp.* and *Thane Int'l, Inc.* rely on the then governing Federal Trademark Dilution Act, which was superseded by the 2006 TDRA. *See Levi Strauss & Co. v. Abercrombie & Fitch Trading Co.*, 633 F.3d 1158, 1166–67 (9th Cir. 2011) (noting that Congress created a new, more comprehensive federal dilution act which articulates a different standard for dilution from that which was utilized under the FTDA).

While the discussions regarding what is required to demonstrate famousness remain relevant, the "niche market" theory advanced in these cases was expressly repudiated by the TDRA, which explicitly states that "a mark is famous if it is widely recognized by the general consuming public of the United States." §1125(c)(2)A); *See Urban Home, Inc. v. Cordillera Inv. Co., LLC*, No. 13-08502, 2014 WL 3704031, at *6 (C.D. Cal. June 19, 2014) ("The trademark dilution statute was revised in 2006 to deny protections to marks whose fame extends only to niche markets . . . ."); *Luv N Care, Ltd. V. Regent Baby Prods. Corp.*, 841 F. Supp. 2d 753, 757–58 (S.D.N.Y. 2012) (finding plaintiffs' alleged fame among baby product consumers to be insufficient in light of the inclusion in

the TDRA of the phrase "widely recognized by the general consuming public of the United Stated."). Accordingly, Plaintiff's alleged specialized fame is not enough to establish fame.

Therefore, Plaintiff's federal dilution claim fails and Defendant's motion to dismiss Plaintiff's first cause of action is **GRANTED**.

## B. State Service Mark Infringement Claim

Defendant moves to dismiss Plaintiff's third cause of action for state service mark infringement pursuant to California Business and Professions Code § 14245. Defendant advances essentially no new arguments as to why Plaintiff's claim should be dismissed. It instead renews its argument that Plaintiff's SDSF mark, as a stylized design mark, bears no resemblance to anything Defendant has ever used and its specific elements, as described on the face of the registration, preclude any plausible finding of infringement as a matter of law.

While a district court is not precluded from determining likelihood of confusion as a matter of law at the pleading stage, the Court declines to do so here. *Murray v. Cable NBC*, 86 F.3d 858, 860–61 (9th Cir. 1996). Though the similarity of the marks is an important consideration in determining the likelihood of confusion, it is just one of eight factors that the Ninth Circuit obliges courts to evaluate. *See AMF, Inc. v. Sleekcract Boats*, 599 F.2d 341, 348 (9th Cir. 1979) "In determining whether confusion between related goods is likely, the following factors are relevant: (1) strength of the mark; (2) proximity of relatedness of the goods; (3) similarity of sight, sound and meaning; (4) evidence of actual confusion; (5) marketing channels; (6) type of goods and purchasers care; (7) intent; and (8) likelihood of expansion." *Id.* Thus, in light of Plaintiff's allegations regarding actual confusion, relatedness of the festivals, and intent, the Court finds that Plaintiff has sufficiently pled its claim.

Consequently, Defendant's motion to dismiss is **DENIED** as to Plaintiff's third cause of action.

## III. CONCLUSION

For the reasons discussed above, Defendant's motion to dismiss is **granted in part** and **denied in part**.

Plaintiffs' request for leave to amend the First Amended Complaint is **DENIED** because amendment would be futile. Plaintiff has had two attempts to plead the same claim and there is no indication that Plaintiff has other facts to allege to cure the deficiencies discussed above. Therefore, the Court denies Plaintiff leave to amend its complaint for a second time. *See Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892-893 (9th Cir. 2010) (district court may exercise its discretion to deny leave to amend due to "repeated failure to cure deficiencies by amendments previously allowed" (citing Foman v. Davis, 371 U.S. 178, 182 (1962))).

Accordingly, Plaintiff's first cause of action is **DISMISSED with prejudice**.

**IT IS SO ORDERED.**

Dated: June 7, 2017

Barry Ted Moskowitz, Chief Judge
United States District Court